The next case to come up is Encompass Insurance Company v. Stone Mansion Restaurant, Inc. 17-1479. While counsel is setting up, I just want to welcome students from the University of Pittsburgh Law School. Welcome. Okay, we'll hear from a panelist first. Good morning, Your Honors. Morning. My name is Josh Leckathridge, and I represent Encompass Insurance Company. I would like to reserve three minutes for rebuttal. That will be granted. Okay. May it please the Court, again, I represent Encompass Insurance Company. Encompass Insurance Company filed an action for contribution in this case. We know the facts. We might as well just jump right in. Okay. We've got a, we have a, it's a little mind bender here on the, in terms of the interplay of the two sort of removal statutes. You say they sound absurd. It may just be bad policy. You know, why did, why did the District Court get it wrong in terms of denying the motion to remand? Because the remand statute provides that a formed defendant cannot remove a case from state court. And I understand that there is an additional requirement that that defendant must be properly joined and served in the, in the formed defendant. I mean, I might agree with you that it seems like an anomalous result, but I mean, it may just be an unintended consequence of a statute that was meant to kind of cure something else, which I think we sort of all can agree on in terms of, you know, falsely adding a defendant to create diversity of jurisdiction. Sure. And if you take a look at the case law that has interpreted that portion of the statute, it goes both ways on whether that's an anomalous result or not. Well, but there's a difference between absurd. I don't know whether it's absurd. I, you know, absurd is a pretty high standard. It may not be the result that Congress wanted or intended, but I don't know whether it's, it's against the statute. And it encompasses a position that it's completely contrary to the development of the removal statute and the purpose of the diversity of jurisdiction, and that's to protect. Even if it's, even if it's true that this was not something that Congress specifically had in mind, and we were to assume that, just because language sweeps broader than Congress may have intended, doesn't mean that what it sweeps in is not within the plain language, right? It's possible that it's not within the plain language, but it would be our position here that the result, when you look at the result, it is something that is not what the diversity statute was intended to address. When you say result, you mean the result of the removal? Yeah, removal to federal court. That is correct. Encompass chose to foul suit in state court. The purpose of the diversity statute is to protect the out-of-court, out-of-state defendants. You're suggesting that the court had no jurisdiction in this case. No, I'm not suggesting that there wasn't diversity of jurisdiction. There was diversity of jurisdiction. There was, correct. Right. So it's not an expansion of jurisdiction in the sense that somehow the court was exercising subject matter jurisdiction it couldn't have if you brought the case in the first instance. That's correct. Federal court. Yeah. That being the case, even if it were true, even if it were true that the denial of remand was an error, the court at that point was acting within jurisdiction that it had, wasn't it? It was acting within jurisdiction it has, but when we get to the merits issue, Encompass filed suit in state court because this is dealing with the state statute that the state judge is specially equipped to handle. Completely understand. I guess the point of my question is, does it matter? Does it actually matter in this case whether the form defendant rule was correctly applied or not? Because even if it was incorrectly applied, the district court was in a position to render a decision that was within its jurisdiction. That is correct, Your Honor. Okay. So we could go past that to the state law issue? Okay. The state law issue is an issue, we filed suit for contribution. District court made the decision that we didn't have a right to pursue an action under the Dramshop Act. We have not pursued an action under the Dramshop Act. What the Dramshop Act does is provide the reason why the Stone Mansion in this case is a joint tortfeasor. And the Pennsylvania case law that has interpreted the contribution statute says it doesn't matter what the underlying reason why they're a joint tortfeasor, you have a right of contribution. If this were the case, the position you've taken, that you can actually, as the insurer for the tortfeasor, settle with the victim of a violation of Dramshop responsibilities and then stand in the position of suing the Dramshop as a joint tortfeasor. If that were the case, wouldn't we expect to see some case law out there, someplace in the country, but including in Pennsylvania, that supported this or showed that this kind of thing had happened before because I didn't see anything in your briefing on that. This seems to be the first time anybody's ever said it. Am I wrong about that or is there case law where somebody has done what, in fact, Encompass is trying to do here before? We were not able to locate any specific case law with respect to the Dramshop Act, but there is case law out there with respect to other ways that you can be held civilly liable. But their point in the Stone Mansion side is, you can't do this because the Dramshop doesn't let you do this. And indeed, there's no case law out there where somebody has done this before, which makes me wonder if Stone Mansion doesn't have a point because if, in fact, you could do what you're trying to do here, in the decades and decades that the Dramshop has been around and joint tortfeasor liability has been around, wouldn't somebody have done this before? I think we need to go back to the statute and what the statute permits you to do. And the statute for contribution is clear that the right of contribution amongst joint tortfeasors exists. If we go to the definition of joint tortfeasors, the Dramshop liable defendant here falls in the definition of a joint tortfeasor. How would this play out then? You want the case to go back. Back to the... I'll get it. It's got to go back to the... Well, you want it to go back there, but it's in the federal court now. Yes. And you're saying the federal court got this wrong in terms of the Joint Contribution Act. How would it play out if we were to agree with you, if the case goes back? Would this matter now go to a jury? Would it go back to a judge? How would the case try? Yes. We would try the issue and determine the percentages of liability between Viviani and the Stone Mansion. I discern a little unfairness about that because you're the one who made the decision to settle the case for $600,000. You might have settled it for $3 million. But now you're asking Stone Mansion to pay their share of that settlement. Is that accurate? Certainly that is true, but we will need to prove damages. We will need to prove the damages and that the settlement was the damages suffered by Hoy in this case. It's not something that we wouldn't have to prove damages so they're stuck with our settlement. Okay. So if you were to go back and Stone Mansion has the opportunity to say there were no damages or even if there were damages, we were only at full X percentage, maybe 20, 30, 40 percent. And correct. And it's our position. The $600,000 settlement is out the window. It is, except for it's what the Encompass Insurance Company paid. Can I ask what Judge Fuentes was asking in a slightly different way? Sure. What is the jury going to be asked to do? Assign a percentage or assign a dollar value? It could be both. Our position would be that by the time this reaches a jury, because of other factors in the case, that the damages were well in excess of $600,000. So we think the defendant will stipulate as to the amount of damages. But if they don't, then we'll have to prove damages and percentage is for both parties of their responsibility. I have a case, Sevitz v. Land Tool Company. I don't know if you're familiar with it. But along the lines of what Judge Jordan was saying, it deals with UCATA. I guess that's what it is, U-C-A-T-A. But it deals with joint tortfeasors. It says it matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff. Is that something that would be good for your side? I would think it would be, right?  We cited that in our brief. Okay. All right. It doesn't matter which theory the tortfeasor is responsible to Hoy, in this case, to the injured party. Right. And the defendant in this matter seems to be taking the position of, we don't have an independent right to recover under the Dramshop Act. That's not what we're saying. Well, I thought their position was, and the position that Judge Schwab had taken, was not that you have to have some independent right under the Dramshop Act, but that the Dramshop Act acts as a limitation. It's a competing statute. In tension with the sort of broad reading of U-C-A-T-A that you're advancing, isn't it possible that a statute in a specific arena, like liquor sales, could be framed in a way to limit a broader statute, like the Uniform Contribution Among Tortfeasors Act? I think it could. And if we were pursuing our cause of action under the Dramshop Act, I think it could limit the liability. Even if you weren't. I'm taking you at your word. You've never said, I want to get you under the Dramshop Act. I want to get you as a joint tortfeasor, even though your underlying theory of tort is based on the Dramshop Act, right? Yeah, it's the case within a case, essentially, Your Honor. So assume for discussion that we fully accept what you're saying there. Isn't it possible that a more specific statute can act as a break or a limitation on a more general statute? I think that that possibility could exist. But keep in mind here, the case that we're proving is the liability of the Dramshop license holder to Hoy. That's the case within a case. And according to your learned friend there across the aisle, you could not have brought that case. Indeed, you tried to bring that case in the litigation that Hoy did bring and were denied the opportunity because you were out of time. You were too late. You were not timely. Is that correct? I think a little bit of factual background is warranted here. The defendant, Viviani, in that case, died as a result of the car accident. So we had no way to determine where he was served, how much he was served, who he was served until that position started. We tried to join the bar at that point in time, and Judge Waddick denied our motion to join the bar. Now, our understanding of his decision is you can pursue this by way of contribution after you settle the case, but it's too late to join them at this point in the litigation. Too late because of statute of limitations? No, too late because too much had happened in the case, and you can't bring them in this late in the game because depositions had already occurred. So their implication that a statute of limitations issue was in play is inaccurate? Because I took that to be implied in what they were saying, is that you faced a statute of limitations issue. You're saying it wasn't a statute of limitations. It was a matter of discretion with that trial court because the case had progressed so far it was impracticable to add to at that point. When the motion was filed, it was beyond the statute of limitations, but the motion was based on the discovery rule because the defendant in that case didn't have an opportunity to discover who the bar was until they got that information through the course of the case, and we were prompt in trying to join the bar at that point in time. So our understanding of Judge Waddick's opinion on that issue is that although you might have a cause of action for contribution against them, I'm not going to let you join them in this case at this time. Can I just go back to the first thing we talked about? Maybe I'm a little bit confused. Your argument is that it was improperly removed, but the district court does have diversity jurisdiction. Is that right? That is correct. I mean, the parties are diverse, and there's at least $75,000 at issue. So is this really an issue in the case? I understand it might be something you want an answer on, but does it matter at the end of the day? Well, had Encompass originally filed suit, the court clearly would have had jurisdiction, but it's Encompass's position that because they filed suit in state court, that was their chosen venue, and the removal was improper, and it should have been remanded back to state court. But the district court would have had original jurisdiction. That is correct. Why was the removal improper according to your position? The removal was improper because we have a state court defendant. Is there an agreement of service with the? There was. With Stone Mansion? That's just another layer on this. As we talked to Stone Mansion prior to filing suit, said, hey, this is the case that we're having. They referred it over to counsel rather than reaching a resolution. We talked to counsel. We said, will your client accept service, or should we have them served? They were not served as a result of his agreement to accept service, an agreement to accept service by way of electronic mail. Well, the form didn't come back anyway, right? You didn't get the signed form back, which is what you need in order to effect proper service, right? That is correct, but had we known that this was going to happen and he wasn't going to make good on his agreement, we would have served him by sheriff and we wouldn't have been in federal court in the first place. Doesn't the rule require actual service? Pardon me? Doesn't the rule require actual service, not an agreement to be served? There are two ways you can be served in Pennsylvania. You can file an acceptance of service or you can be served by sheriff. Was an acceptance of service filed? It was not. All right. All right. Thank you, counsel. We'll hear in rebuttal. May it please the court, good morning. Good morning. I'm Attorney Miles Kirshner and I represent Stone Mansion. If I may for a moment also welcome the Pitt students. I'm an adjunct at Pitt and next term I'll be teaching advanced Pennsylvania torts, so I hope to see some of the students in my classroom. Mr. Kirshner, maybe you can start by telling them how it is that a defendant's lawyer can tell a plaintiff's lawyer I'll accept service and then not accept service until they file a motion to remove. Judge Jordan, I was expecting that question, and my answer is that we did accept service. We accepted service in federal court. Doesn't that seem like Judge Schwab thought that was too cute by half and said so? Sure. Doesn't it seem a bit fast and loose to tell somebody, yeah, I'll take service, but I'll take it in the form I want to take it in, not the form you filed suit in? So a little context is required here, Your Honor. By the time Encompass filed its suit against Stone Mansion, some six years or so after the event, Stone Mansion was out of business. When opposing counsel contacted me and we first began to speak about this case, my client still does exist on the books of the Commonwealth of Pennsylvania Department of State, but it had no physical location. It didn't transact any business and could not have been found. They would not have been able to have obtained sheriff's service on Stone Mansion. So the agreement that I made, consistent with the long traditions that we practice under here in Allegheny County, was one of convenience and cooperation to counsel to allow him to avoid having to beat his head against the wall, if you'll excuse the expression, to obtain service that he couldn't find. If you'd said to counsel, hey, Mike, I'll take this and accept service, but I'm removing this case, do you think that would have resulted in them just saying, oh, you don't exist, there's no way for us to serve you except by agreement with you, or do you think they would have been motivated to find some other way to effect service? The only response that I can give to that, Your Honor, is we never discussed jurisdiction and I was never asked to waive what might otherwise be a means by which to remove the case. My understanding of my ethical obligations is to always be cooperative and professionally courteous, but when that crosses the line to impacting my client's substantive rights, I am required by my duty to my client to exercise those rights. And so we were expecting this complaint. We knew that it was coming. Did you know that it was in state court? We did not. Again, that was never discussed. We didn't know where they would file. We knew that there was diversity of citizenship. And so when we first learned that the action had, in fact, been filed, and before accepting service, which, again, respectfully I did do once this case was lodged in the federal court, we looked at the case law in this district, in the Western District, and we saw the opinion from the chief judge in the Western District, supported by Judge Caputo in the Middle District, which focused on that language in the forum defendant statute, which says properly joined and served. And there was, forgive me for using the phrase, but a roadmap for removal that was available to us regardless of the fact that our client is a forum defendant. And so we respectfully do not apologize for having availed ourselves of that roadmap that was available by reason of Judge Conte's decision here in the Western District. So looking back, you wouldn't have done things at all differently. You wouldn't have said in the first conversation, you know what, this belongs in federal court and here's why. You would have said, yeah, we'll take it and then remove just the way you did. I respectfully can't speculate. We didn't discuss jurisdiction. We knew that they were going to sue us, and I would quickly transition and say, the same arguments that were made to the district court would have been made in state court in this contribution action, and addressing the point that you made to my opponent regarding the effort to join Stone Mansion in the underlying Hoei tort action, we would have raised exactly the same issues there. The panel is correct and Attorney Guthridge is correct. The Judge Wethick, it was the plaintiff, it was Hoei, who objected to the bringing of Stone Mansion into the underlying case for reasons of her own. If we assume that this case properly belongs in the federal court, if the federal court has jurisdiction, it seemed like Judge Schwab viewed this as a tort case rather than a contribution case. I heard what opposing counsel said when he argued, Judge Fuentes, that this case is brought under the UCATA, under the Uniform Contribution Among Tort Feasers Act. Isn't that the claim he made in the complaint? No, respectfully. Isn't it labeled as a complaint for contribution? That's what they called it, but one need look no further than paragraph 17 of the complaint for contribution, in which the plaintiff contends that the basis of recovery is a violation of section 4-497 of Pennsylvania's Dram Shop Act and a contention with which we disagree that that violation gives rise to an entitlement to, quote, all damages. Well, that's an underlying claim that would be made against Stone Mansion, but Encompass is still asking for a contribution based on the settlement that they made. Under Pennsylvania statute, isn't that appropriate, as well as under the Svets case? It would be appropriate, Your Honor, if the action was otherwise cognizable. I was listening closely when Judge Shigeri questioned opposing counsel on the Svets case, and his question was that it matters not on which theory the defendant is liable. My respectful response to that is the theory has to be one which is cognizable, and that's where this case falls down. This claim is not cognizable because Encompass is not among the class of people in whose favor the Dram Shop Act creates an exception. Their assertion is we stand in Hoy's shoes that by virtue of the Contribution Act having settled, we are, in effect, recovering part of what was the benefit to the victim. So how can it be that they are not within the scope of the people to be protected by the Dram Shop Act if what they're trying to do is get money for a contribution associated with payment to the victim? Judge Jordan, they do not contend that they stand in Hoy's shoes. I read it several times in their briefing. If one looks to their complaint, the document on which the motion to dismiss was based, there are two places. Forgive me, I don't have the paragraph numbers available to cite to you, but there are two specific places in their complaint, and again in their brief in opposition to the motion to dismiss, where Encompass confirms they stand in the shoes of Viviani. I addressed this in my reply brief on the motion to dismiss. Judge Schwab had made a comment in his opinion regarding the remand that this contribution action is essentially like subrogation. And when I saw that, I felt a need to correct it because it isn't. Is there, not to run too hard with this analogy, but are people allowed to change shoes? They are standing in the shoes of their insured when they negotiate with Hoy and make a deal. But having made the deal with her and paid her, are they then in the eyes of the law stepping out of Viviani's shoes and into Hoy's shoes for purposes of a Contribution Act claim, where they can come and say, we took care of your problem. You, Stone Mansion, I'm sorry to point at you. You're like, Stone Mansion out there. You, we took care of your problem. We're entitled to have you, the wrongdoer, the joint tortfeasor, now contribute to making that right because we took care of that problem and we were the burden for Hoy. So we are like Hoy here. Give us some money. I take it that that's the legal theory they're putting to us. What's wrong with that theory? Stone Mansion didn't have a problem with Ms. Hoey. She could have, there's no question, Helen Hoey could have sued Stone Mansion on the Dram Shop Theory. You would have a problem if Encompass had not settled the case. That is respectfully not correct, Judge Fuentes. No one had sued Stone Mansion. Hoey could not file a claim against Stone Mansion. Hoey did not file. Did not file, but could have filed. She could have, but she chose not to. And that was why I responded to the question by saying Stone Mansion didn't have a problem. Hoey did not sue them. And the reason why they can't do what you have suggested, Judge Jordan, is because of the first sentence of Section 4-497. You were correct in your questioning of Attorney Guthridge when you said, isn't this a limiting statute? Section 4-497 doesn't create a civil cause of action. It, in fact, limits one. There is no, one might expect that when you hear the term Dram Shop Act, that you would see a section that says, in the event a visibly intoxicated person is served, then a claim may be brought against the liquor licensee. That's not the way it's phrased, and that's not why we filed our motion to dismiss. This statute says, no licensee, it begins, no licensee shall be liable. That tells you right in the very first clause, the very first phrase, that this is a limiting statute. Unless you do certain things, we understand that the service of alcohol is a legal thing. What comes after the unless is, unless the customer who inflicts the damage was sold first, et cetera, when the customer was visibly intoxicated. And, of course, that is the assertion here, is that Mr. Viviani was visibly intoxicated, and hence there would have been a liability under the Dram Shop Act had Ms. Hoy sued Stone Mansion and Viviani's estate together. I mean, I think you're not even contending that Ms. Hoy couldn't have done that. She could have. Right. But Encompass cannot, and the reason is because of the clause that is in the middle of the two that you just cited. The statute begins by saying, no licensee may be liable, and the next phrase, and forgive me if I don't have the exact quote, to third persons for damages inflicted upon them. And it is the critical distinction in this case is that in paragraph 17 of their complaint, Encompass contends that service of a visibly intoxicated person entitles them to contribution with respect to all damages, and we disagree with that. We believe that the fundamental or the critical two words in this statute are upon them. It couldn't be fairly read their complaint to say we're entitled to contribution because of the damages inflicted on Hoy. That would be subject to exactly the same challenge that we made. The district court cited the, if I'm going to get this case wrong, I apologize, Justizen case in which the Pennsylvania courts have clearly held that in order to be liable under the Dram Shop Act, you have to be in the category of people whom that act was intended to protect. I'm with you. I understand that. I guess this is the, here's the logical conundrum I feel like the parties have put Judge Schwab and us in. You say insurers are not in that category. They say we're not claiming a right to collect from you on some wrong done to us directly. We're making a claim not under the Dram Shop Act. We're saying you were liable. You had a liability. You had an exposure. We removed that exposure. And under the Uniform Contribution Among Tort Feasers Act, which is no limiting language in it at all, we're entitled to come after you. And there's nothing in UCADA that says, hey, it only works against these kind of claims. It works against all kind of claims. So you had an exposure. We took care of it. We're entitled to come and say help pay up. Now, I'm having problems because you say they're not within the scope of people to whom the Dram Shop Act would allow cognizability, but they're not claiming to be that. They're claiming she was within that. They paid her off. The UCADA gives them a right. So, you know, how are we going to square that circle? You guys seem to be passing each other in the night here. By referring, and forgive me, I don't mean to repeat, but by referring you back to the language of their complaint, where they say on two different, they do not say that they are HOE. They say they stand in the shoes of Viviani. This gets to that distinction between contribution and subrogation cases. In a subrogation case, the insurer does slide right down into the shoes of the party who has been damaged, of the party who's had to pay money. In a contribution action, based not on contract but on statute, that doesn't happen. And finally, Judge, I see that the yellow light is on. I would respectfully steer the court back to the question you asked of opposing counsel. If you can do this, why hasn't anyone done it before? You know, I say this carefully because I know I have a jury box full of federal clerks who can fact check me. Exactly what I did was I plugged the term 4-497 into Lexis, and I searched it in a field of all Pennsylvania and Third Circuit cases. It came up with between 70 and 80 cases. The vast majority were people in HOE's position, victims who had sued the bar for their own damages. There were some that were insurance coverage cases. There were some that were licensing cases. But we did not find one reported case that has ever involved a claim for contribution by an insurer which chose to settle a claim against its tortfeasor. They were, of course, only doing their duty. They were protecting their insured. They are not in the category of people to whom the statute refers. For that reason, we respectfully contend that the district court did not commit error. The result of this court should be to affirm. And if I may, finally, I agree with the court. There was unquestionably subject matter jurisdiction. So even if you find that the remand was improper, there was jurisdiction to make this ruling. And a disposition that sends this case back to be relitigated in federal court ‑‑ excuse me, in state court under the exact same arguments that have now been argued to maturity here, we don't think would make sense. What if there had been a ‑‑ what if HOE ‑‑ I'm sorry, Judge. I just didn't hear you. What if there had been no settlement? Supposing that HOE sued Stone Mansion as well as Viviani. At that point, would you be exposed? We would be exposed to the potential of a direct claim filed by Ms. HOE. But if this contribution claim had been filed in state court, we would be opposing it with exactly the same arguments. Supposing in the course of litigation, Encompass decided to settle the case with HOE? A decision that they were entitled to make and apparently did, in fact, make. So you say that you're only required to make a contribution upon a specific finding by a court? We're only required to make contribution when the legal basis for the claim that our client is a tortfeasor is cognizable. And because we are not the them who ‑‑ excuse me, because Encompass is not the them that is contemplated in the first phrase of section 4‑497, it's not a cognizable action. You never reach the uniform contribution among tortfeasors act in this case because you have to have a basis for recovery before you can apply that law. Are you saying that if the state court action that Ms. HOE brought had been against Stone Mansion as well as against Viviani, and Encompass had succeeded in being a part of that case, that is, joining in its own right and saying, we're standing in the shoes of Viviani now, we're a tortfeasor, Stone Mansion is a tortfeasor, we have a right if we end up, whatever happens here, we have a right of contribution against Stone Mansion. You're saying that the state court would have thrown that out and said, no, no, no, you can't make that claim in this suit. We certainly would have been making exactly the same argument that was made in the district court and that we make here today. That even though in that instance the hypothetical I'm posing to you, you're in the suit, they're in the suit, you're clearly joint tortfeasors, you'd be saying Encompass can't make that claim because somehow what? I mean, isn't that the classic example of joint tortfeasors? The wrongdoer and a co-wrongdoer, you're saying that no claim could have been made in the name of Viviani against you folks. That is what we're saying, but more importantly, that's not what happened. That's not the case that's before you. I know that's not the case that's before us, but the logical conclusion from what you're saying is that that couldn't have happened either, and I'm wondering, that means when I say that couldn't have happened, that there couldn't have been a legal claim in the kind of context I've just described. Right. That is your position. Our position would be that an insurance company which insures a negligent operator of a motor vehicle and makes a decision to settle that claim does not have a contribution action against a bar under the Dram Shop Act. That is exactly what we're saying. But you also seem to suggest that Stone Mansion could never be liable for contribution under any scenario. That's what the first section of the first line of 490, excuse me, 4-497 seems to say. It says liable to them, liable to the injured party. And if it's not in there, then it's limited. Which is why I'm asking you the question that I just asked. I think it goes with what Judge Fuente said. The logical limits of your position is that if there had been a lawsuit, Hoy versus Stone Mansion and Viviani, and Viviani had made a claim for contribution against you, you could say you have no claim. You've got no claim. Even though your insurer, Encompass, is prepared to make a settlement, we owe nothing. You can't make a claim against us. Our position would be that Stone Mansion is potentially liable on a direct claim by the injured party, the first phrase of 4-497 says so, but not on a contribution claim. Wow. But you could be found liable by a jury, couldn't you? We could have been found liable to Hoey, but not on Encompass's contribution claim because they're not them. They're not the party whom the statute seeks to protect. And if not protected, then the cause of action does not exist. Okay. Thank you, counsel. Just very briefly, Your Honors, I'd like to answer the question that you just posed to opposing counsel. I think that's likely the reason that you don't see this develop in the case law on a regular basis, is because the negligent tortfeasor and the bar are together in the lawsuit, and they just seek contribution from one another. And then the jury works out the percentages of liability, and that goes to the injured party. Encompass is standing in the shoes of Viviani making a claim for contribution. To prove the claim for contribution, they have to prove liability to Hoey. So although Encompass is standing in the shoes of Viviani, as we set forth in our brief, the contribution claim, the case in the case, they have to prove the claim that Hoey was making. They've never made a claim for damages suffered to Viviani. Your adversary has pointed numerous times to paragraph 17. What's your response of your complaint where it discusses the Dram Shop Act? Sure, because we didn't know that they would concede that they were a joint tortfeasor, so we have to establish for the law that they're a joint tortfeasor liable to Hoey. So we have to set forth the basis for making them a joint tortfeasor, the basis for their liability. And that is the Dram Shop Act. Did you make it clear to the district court that your claim was a claim for contribution as opposed to a claim for finding liability? We did, Your Honor, and we even filed a motion. Your complaint said we're joint tortfeasors and we're looking for a contribution. We even filed a motion for reconsideration and reaffirmed that to the district court to make sure that it was absolutely clear that this was not a claim under the Dram Shop Act, that this was a claim for contribution. Unless the panel has anything further for me, I'll conclude. That's all we have, counsel. Thank you. We'll take the case under advisement.